MOISE, Justice.
Plaintiff has appealed from a judgment of the trial court rejecting its demands.
We find that the trial judge has ably presented the facts and drawn the proper conclusions, and we, therefore, quote his reasons for judgment with approval.
“This is a demand for an accounting to Plaintiff, City of Houma, for all natural gas sold and delivered to the Southdown Sugar Factory my Defendant, Sugar Bowl Gas Co., Inc., from October 1, 1950, at the rate of four ($0,040) cents per thousand (1,000) cubic feet, the demand being based on a written contract dated August 26, 1941, signed and executed by Plaintiff and Lake Long Gas Co., Inc. and in evidence in this proceeding as Exhibit “A”, the contract having been assigned by Lake Long Gas Co., Inc. to Defendant in this proceeding. Alternatively, Plaintiff prays for judgment in the sum of Thirteen Thousand Nine -Hundred Five and 24/100 ($13,905.24) Dollars against Defendant, such amount allegedly representing the amount due by Defendant to Plaintiff for all natural gas sold and delivered by Defendant.to the Southdown Sugar Factory from October 1, 1950, to the date of the institution of this suit on July 11, 1951, at the said rate of four ($0,040) cents per thousand (1,000) cubic feet. Plaintiff also demands a reservation of its alleged right to further accountings from Defendant for all gas that may be sold and delivered by Defendant to said Southdown Sugar Factory after the institution of this proceeding and for so long thereafter as Defendant might sell and deliver natural gas to the said Southdown Sugar Factory.
“Defendant’s position is that the contract sued on expired by its own term of limitation on October 1, 1950, and for such reason, it owes Plaintiff no accounting and any sum of money whatever for the natural gas sold and delivered by it to the said Southdown Sugar Factory on and after October 1, 1950.
“There is no important dispute with reference to the relevant and material facts in this case.
“The rights of the parties depend entirely upon the legal interpretation to be given to the contract sued upon; the contract being dated August 26, 1941 (Exhibit “A”). The relevant provisions of the contract read as follows :
“ ‘Whereas, Gas Company by virtue of an assigned contract by S. M. Williams, Jr., is selling natural gas to the City and under the terms of this contract the City has the right to sell natural gas to consumers outside its corporate limits, including the Southdown *171 Sugar Factory and its properties, operated by the Realty Operators, Inc., which factory is adjacent to the corporate limits of the City, and
“ ‘Whereas, the Gas Company desires to contract direct with the Realty Operators, Inc., for the sale of natural gas for all fuel requirements and other uses in the operation of said sugar factory and its properties, as hereinafter set out,
“ ‘Now, Therefore, in accordance with the covenants and agreements herein contained and to be performed on the part of each of the parties hereto, it is agreed by and between said parties hereto:
“ T.
“ ‘Subject to the terms and conditions hereof City agrees to and does hereby grant to Gas Company the right and privilege to enter into and execute a gas sales contract direct with the Realty Operators, Inc., for the sale of natural gas for all fuel requirements and other uses in the operation of the Southdown Sugar Factory and its properties south of Bayou La Carpe, with the provision that said factory shall have the right to use as, fuel any or all of the bagasse produced on said properties and such oil supply as they may presently have on hand in storage tanks.
“ ‘II.
“ ‘The City agrees, at its own expense, to secure all rights-of-way and construct a 4% inch O. D. steel welded wrapped pipe line from a point connecting with the main pipe line of Gas Company, now serving City, on the pipe line side of the Houma measuring station to the Bayou side of the South-down Sugar Factory, (locations all to be mutually agreed upon), furnish and construct meter house, meter and regulator, all of a size to meet the requirements to insure accurate measurement and proper pressure for the service of natural gas for use of the said South-down Sugar Factory; provided, however, that the necessary rights-of-way, over property of Realty Operators, Inc., shall be furnished by Gas Company to the City free of cost.
“ ‘HI.
* * % j(c #
“ ‘IV.
“ ‘Gas Company agrees to operate and maintain said pipe line and meter and regulator station constructed by City for a period of nine (9) years beginning with completion of line and ending with October 1, 1950, without cost to the City.
“ ‘V.
“ ‘As full consideration for the City constructing said gas pipe line and *173 granting to Gas Company the right and privilege to enter into and execute a gas sales contract and sell gas to the Realty Operators, Inc., for use in the operation of the South-down Sugar Factory and its properties, the Gas Company agrees to read the meter at the factory site of the Southdown Sugar Factory and pay the City the sum of four (4^) cents per M. C. F. on all gas sold and delivered to the Southdown Sugar Factory and its properties, the unit of measurement for the gas so delivered to be one thousand (1,000) cubic feet of gas at a temperature of sixty (60) degrees Fahrenheit and at a pressure of eight (8) ounces gauge pressure above fourteen and seven-tenths (14.7) pounds absolute atmospheric pressure, and the readings and registrations of the metering equipment herein provided for shall be computed into such units.
* * * * * *
“ TX.
“ ‘This contract shall continue for a period of nine (9) years or as long thereafter as it shall be agreeable to City to allow Gas Company to serve the Southdown Sugar Factory and its properties south of Bayou La Carpe; provided that nothing herein shall be construed as obligating either party to extend this contract beyond nine (9) years.’
“In a general way, the contract is tied to another written agreement dated September 14, 1939, (Exhibit “P-1”), the pertinent provision of the latter being Section 5 of Article I thereof, which reads as follows:
“ ‘It is agreed between the parties hereto that Buyer shall have the right to serve all classes of customers within the City of Houma and beyond its City limits, with the provisions that in the event Buyer should be unable to serve beyond the City limits, Seller shall have the right to do so.’
“As appears from Article I of the contract sued on (Exhibit “A”), and Article IV thereof, this Court can only conclude that the contract' sued on was for a fixed term period of nine (9) years, ending October 1, 1950. While this Court is not unmindful of the fact that Article IX of said contract, after provided that the contract shall continue for a period of nine (9) years, also provides the contract “may continue as long thereafter as it shall be agreeable to the City to allow Gas Company to serve Southdown, etc.” this Court’s attention is also inescapably drawn to the concluding phrase of said Paragraph IX which reads as follows:
“ ‘Provided that nothing herein shall be construed as obligating either party *175 to extend this contract beyond nine (9) years.’
“This Court is impressed with the fact that no matter what the parties to the contract in question first intended to mean when they provided that beyond the nine (9) year period, the contract could continue ‘as long thereafter as it shall be agreeable to the City to allow Gas Company to serve Southdown, etc.’ by inserting at the end of said Paragraph, the provision that ‘nothing contained in the agreement shall be construed as obligating either party to extend the contract beyond nine (9) years’, they left no doubt that they meant that finally the contract could not be extended beyond its nine (9) year term, except by mutual agreement.
“It is also the opinion of the Court, that the evidence conclusively establishes that both Plaintiff and Defendant interpreted the provisions of the contract sued on to mean that the contract would expire on October 1, 1950, for instance, witness the conduct of the parties beginning December 8, 1948, when Defendant first requested of Plaintiff a reduction in the rental rate for the use of Plaintiff’s pipe line to Southdown. Plaintiff then agreed to come to some conclusion and submit to Defendant its proposition at the next meeting of its governing authority on January 12, 1949. It is further established that on January 12, 1949, a representative of Defendant telephoned Mayor Gary with respect to Defendant’s communication of December 8, 1948, Mayor Gary then advising Defendant that Plaintiff was not then ready to submit its answer to the December 8, 1948 proposal of Defendant, but that Plaintiff would have an answer ready when its governing authority would again meet on February 9, 1949. The evidence further shows that as a result of the meeting of Plaintiff council on February 9, 1949, Plaintiff presented Defendant with a new contract, provided certain rental changes, etc., and that offer Defendant rejected. In lieu of Plaintiff’s then proposal, Defendant made a counter proposal to Plaintiff respecting the use by Plaintiff of a new gas pipe line that Defendant would construct to the Southdown mill in order to more properly balance the pressure in Plaintiff’s gas distributing system. Nothing further occurred between the parties until March 9, 1949, when Plaintiff’s governing board adopted the following resolution.
“ 'Mr. Vice moved that the Sugar Bowl Gas Company be advised that, inasmuch as the contract between' the City of Houma, Louisiana, and the Sugar Bowl Gas Company for rental of the gas line servicing Southdown Refinery expires October, 1950, the City of Houma is not prepared to make ány commitments relative to their request at this time.
*177 “ ‘Motion seconded by Mr. Theriot and unanimously voted.’
“A copy of said resolution was mailed by Plaintiff to Defendant. On March 26, 1949, Defendant wrote Plaintiff acknowledging the receipt of a copy of the resolution quoted above, and suggested to Plaintiff that it negotiate a contract direct with the Southdown Factory owners to serve the Mill through Plaintiff’s gas system. On April 13, 1949, Plaintiff’s governing authority met and appointed a committee to meet with Defendant on April 19, 1949, in order to attempt to arrive at some solution relative to the service to South-down Factory after October 1, 1950. On April 19, 1949, Plaintiff and Defendant, through their authorized respective representatives, met for such purposes. At that meeting, Plaintiff proposed to Defendant, certain concessions as to rentals for Plaintiff’s pipe line, provided certain rate reductions were also made by Defendant to the Southdown Sugar Factory. Proposals and counter proposals were made at the time, but Plaintiff and Defendant came to no agreement whatever with respect to the extension of the contract in question, Defendant finally suggesting to Plaintiff to attempt to contract with the Southdown Factory owners direct for their gas requirements and service after October 1, 1950.
“The evidence further shows that some time before July 21, 1949, the owners of Southdown Sugar Factory contacted Defendant with respect to supplying their natural gas requirements after October 1, 1950, and informed Defendant that Plaintiff had never contacted said Factory Owners whatever for such purposes. Whereupon, on July 12, 1949, Defendant notified Plaintiff by letter of its conclusion to discontinue all further discussions relative to extending the contract sued on. The letter also notified Plaintiff that the contract would expire on October, 1950, and that, on account of the time element involved for the future servicing of the Southdown Factory after October, 1950, Defendant ‘must consider that the City desires the contract to expire by its own terms. Our future consideration will be based upon this assumption.’ The evidence shows that Plaintiff did timely receive this communication from Defendant. Such details of the conduct of the parties beginning December 8, 1948, taking them through negotiations on January 12, 1949; on February 9, 1949; on March 9, 1949; on March 26, 1949; on April 13, 1949, and on April 19, 1949, convince this Court that the parties themselves knew well and considered that the contract sued upon would expire on October 1, 1950, unless renewed or extended by mutual agreement. Such understanding of the situation by Plaintiff and Defendant emphasizes this Court’s appreciation of the meaning of the term provisions of the agreement in question. In other words, when the *179 Court considers the contract itself, and the conduct of the parties themselves with respect to the question of when such contract was to expire, it can come to no conclusion except that the contract provides and the parties all well knew that, the contract expired on October 1, 1950, unless extended or renewed by mutual consent of both parties.
“The Court has no doubt that Plaintiff has the legal right to serve the public outside of its corporate limits with natural gas, etc., but plaintiff is not the exclusive owner of that right to so sell and distribute natural gas outside of its corporate limits, hence, the Court is unable to follow Plaintiff’s argument that the motivating factor for the execution of the contract sued on, was the granting to Defendant the right to serve the Southdown Sugar Factory, a right which defendant already enjoyed. It appears to this Court that the agreement was of the nature of a joint venture between the parties, whereby Plaintiff bound itself to construct a certain pipe line, to be used by Defendant for a specific purpose during a specific period of time, on what may be called a ‘toll’ or ‘rental’ basis, from all of which it would seem that Plaintiff received handsome returns.
“If Plaintiff’s position that the contract could continue beyond its nine (9) year term period, ‘as long thereafter as it shall be agreeable to City to allow Gas Company to serve Southdown, etc.’ such a construction would strike meaningless the last clause of the Article of the contract which states that ‘provided that nothing herein shall be construed as obligating either party to extend this contract beyond nine (9) years.’
“As already pointed out, the conduct of both Plaintiff and Defendant, beginning December 8, 1948, when negotiations were begun looking to the renewal or extension of the contract sued on, establishes beyond doubt that the parties knew and realized that the last clause of Article IX of the 1941 contract meant just what it said, namely that neither party was legally bound to extend the contract beyond nine (9) years.
“The Court, of course, takes cognizance of the fact that, on September 30, 1950, the day the contract sued on expired, Plaintiff mailed a written notice to Defendant, stating that Plaintiff was agreeable to extend the comtract sued on. However, considering the views hereinbefore expressed, the Court does not believe that said written notice of September 30, 1950, had or could have any binding effect on Defendant.
“The evidence further shows that it was not until after July 21, 1949, that Defendant undertook negotiations with the South-down Sugar Factory owners for that Factory’s natural gas supply after October 1, 1950. The evidence also establishes that an economic setting up and construction of the *181 necessary pipe line to effect such purposes, required more than a year’s efforts and activities and that such new independent line of Defendant was completed just a short time before October 1, 1950. The evidence further shows it is the custom and practice of the business of natural gas supply to give at least a one (1) year notice in advance of the termination of any fixed period contract for the extension of any such contract when such contract may be extended by either party, and even though the Court would take the position (and this it does not) that Plaintiff alone and without Defendant’s express consent, could extend the contract beyond its fixed period of limitation, a reasonable notice to Defendant of such purpose would have been necessary under the law; however, since the contract did not provide when such notice should be served, this Court would have to hold that such a notice would have had to be served upon the Defendant some reasonable time before October 1, 1950. Certainly, however, the written notice mailed by Plaintiff to Defendant on the day of the expiration of the contract sued on, could not be said to have been served upon Defendant within a reasonable time before the fixed expiration of such agreement.
“Since Defendant used its own independently owned and constructed pipe line to serve the Southdown Factory after October 1, 1950, and did not remain in possession of Plaintiff’s pipe line, this Court does not feel that there was or could be any reconduction of a lease, as argued by Plaintiff. As originally pointed out, the Court is of the opinion that the nature of the agreement bears the characteristics of a joint venture and has none of those of a lease, nor was it ever intended or considered by the parties as a contract of lease.
“For those reasons, the Court is of the opinion that the authorities cited in Plaintiff’s brief on the question of reconduction of leases, are not at all in point.
“Under the legal rules of construction of written agreements, etc., particularly, under Articles 1802, 1813, 1814, 1815, 1903, 1950, 1953, 1956, 1957, 1958, 1959, 1964, 1965, 1968, and 2053, LSA-C.C., this Court can only conclude and hold that, the written agreement sued on and dated August 26, 1941, expired on October 1, 1950, and that said agreement was neither extended nor renewed, hence that Plaintiff has no claim whatever against Defendant in the premises.
“For the above and foregoing reasons,
“It is ordered, adjudged and decreed that, there be judgment in favor of Defendant, Sugar Bowl Gas Company, Inc. and against Plaintiff, City of Houma, rejecting Plaintiff’s demands herein and at its costs.”
*183 For the reasons hereinabove assigned, the judgment of the trial court is affirmed. All costs are to be paid by plaintiff.
McCALEB and SIMON, JJ., dissent.